**In re Martin F. HEALEY.**

**No. 95–14–M.P.**

Supreme Court of Rhode Island.

Feb. 20, 1995.

Michael Schwartz, Chairman, Committee on Character & Fitness and J. Renn Olenn, Warwick, for petitioner

Martin Healey for respondent pro se.

OPINION

PER CURIAM

This matter comes before the court in respect to an application for admission to the Rhode Island bar filed October 22, 1993 by Martin F. Healey (petitioner), who passed the Rhode Island bar examination in 1982 but did not complete the clerkship requirement that was then in force. Consequently he was not admitted to the bar of the State of Rhode Island. The petitioner is a member of the bar of California (inactive) and is also a member of the bar of the Commonwealth of Massachusetts in good standing.

The petitioner was engaged as chief prosecutor by the Rhode Island Ethics Commission (commission) in May 1993 and began actual employment for the commission on July 12, 1993.

Pursuant to his application for admission, petitioner was given a hearing before the Committee on Character and Fitness (committee) of this court on January 26, 1994. In the course of this hearing, committee members took testimony from the Chief Disciplinary Counsel, then Mary Lisi, Esquire, and her assistant trial counsel, David Curtin, Esquire. The committee was particularly concerned with an issue that had been earlier raised by Chief Disciplinary Counsel on October 20, 1993 at a meeting in the office of Chief Disciplinary Counsel. At that time Chief Disciplinary Counsel suggested to petitioner that his activities as chief prosecutor for the commission probably involved the practice of law. The precise statements

made at the interview are not available to us since the interview was not recorded. However, from testimony given before the committee on January 26, 1994, it appears that Chief Disciplinary Counsel believed that these activities, including the rendering of opinions on probable cause to the commission, constituted the practice of law.

The Executive Director of the Rhode Island Ethics Commission, Sara Quinn, Esquire (Quinn), also was present at the meeting. She was of the opinion that petitioner's activities did not constitute the practice of law. One of the issues to be determined by the court is whether petitioner concurred that his activities constituted the practice of law or whether he maintained that they were only the formulation of probable cause recommendations to the commission of a type that police officers might make in the application for search and arrest warrants.

Following this discussion, the Executive Director of the Rhode Island Ethics Commission applied to the Acting Chief Justice of this court for an order granting petitioner admission to the Rhode Island bar, pending his formal admission, so that petitioner could carry out his duties with respect to proceedings before the commission. Our rules regarding admission of attorneys, however, make no such provision for admission to the bar on a limited basis unless the applicant is an employee of a federally funded agency. Instead, an order was issued allowing petitioner, pending his formal admission to the bar, to represent the commission in all matters before that body and allowing him to appear in Superior Court and Supreme Court *pro hac vice* in respect to all matters arising out of the business of the commission. This order was entered on November 2, 1993.

Following the hearing on January 26, 1994, the committee made a recommendation to this court dated May 3, 1994 in which it proposed that petitioner's application for admission to the bar be delayed for a period of four months and that during that period his authorization to appear *pro hac vice* on commission business be revoked. As part of its communication to petitioner notifying him of its preliminary findings, the committee invited petitioner to appear before it again and to present any further argument or information which he might deem appropriate in support of his application. Both petitioner and the committee made preparations for an evidentiary hearing, but such a hearing was ultimately waived by both petitioner and the committee.

On November 2, 1994, the committee met and considered additional evidence—affidavits and a memorandum submitted by petitioner and thereafter changed its preliminary findings in part. The new findings were set forth in a letter directed to the members of the court dated December 2, 1994 and are as follows:

"1. Mr. Healey presented affidavits from himself and three witnesses: Mr. Yesser, and Ethics Commission members Stephen Famiglietti, Esq. and Richard Morsilli. All three witnesses indicate in their affidavits that Mr. Healey was not rendering legal opinions or advice to the Ethics Commission at any time prior to October 22, 1993, when he filed his application for admission to the Bar. They also support Mr. Healey's assertions that he was diligently pursuing the application process between July and October 1993. All three note, as do the references and character letters submitted on Mr. Healey's behalf, that Mr. Healey's character and fitness to practice are 'beyond question.'

"Based on these affidavits, a majority of the Committee on Character and Fitness now feels that at the time of Mr. Healey's appearance before the Committee in January 1994, he may have possessed a good faith belief that he had not been engaged in the unauthorized practice of law with respect to his Ethics Commission duties.

"2. The Committee also accepts Mr. Healey's assertions of diligence in pursuing the application process based on the conversations and actions related as having occurred generally between July and October 1993 in the three witness affidavits. "However, the most critical and determinative issue that faced this Committee has remained untouched by the affidavits, and because of this our recommendation to you has not changed as a result of the revela-

tions contained in the affidavits. As detailed in our letter of May 3, 1994, the testimony of then Chief Disciplinary Counsel, Mary Lisi, regarding the substance of her meeting with Mr. Healey and Ms. Quinn on October [20], 1993, and that of Mr. Healey concerning that meeting were directly contradictory and adverse. Mr. Healey seeks to minimize this issue by calling it the result of a mere difference of 'interpretation' or 'recollection,' but this Committee, which heard the testimony of Ms. Lisi and Mr. Healey and evaluated the credibility and demeanor of each, cannot accept this. Mr. Healey presented no evidence to change the opinion of any Committee member on this crucial point."

As a result of these revised findings, the committee again recommended that petitioner's admission to the bar be delayed for a period of four months from and after the consideration of the recommendation by this court and that meanwhile his *pro hac vice* authority to appear before the commission and to represent the commission before the Superior and Supreme Courts should be revoked.

After receiving the recommendations of the committee, this court afforded an opportunity to petitioner to appear in order to show cause why the recommendations of the committee should not be implemented as presented to the court. The petitioner appeared before the court. At that hearing the Chairman of the Committee on Character and Fitness, Michael S. Schwartz, Esquire, was also present. The petitioner outlined his version of the events that had taken place from the time of his employment with the Rhode Island Ethics Commission and particularly his recollections concerning his meeting with Chief Disciplinary Counsel on October 20, 1993. He steadfastly maintained that in his opinion, he had not been practicing law prior to obtaining *pro hac vice* authority to do so, and that he had not concurred with Chief Disciplinary Counsel that he had been so engaged.

After hearing petitioner and examining the detailed and comprehensive report of the committee, we have carefully examined the transcript of the hearing that took place be-

fore the committee on January 26, 1994. We agree with the committee's finding that the testimony of Chief Disciplinary Counsel on the one hand and petitioner on the other hand is not easy to reconcile. However, a close reading of the transcript discloses that Chief Disciplinary Counsel stated that petitioner "concurred" that he was engaged in the practice of law and in another instance suggested that he "pretty much felt" that he was engaged in the practice of law. The petitioner in his testimony stated that Chief Disciplinary Counsel was absolutely incorrect in that statement and that her recollection was "incorrect or incorrectly mis-remembered [*sic*]."

From reading the transcript, we have no doubt that Chief Disciplinary Counsel and her assistant trial counsel were firmly and sincerely of the opinion that petitioner had been practicing law in presenting opinions to the commission concerning violations of the Code of Ethics. However, petitioner stoutly maintained before the commission and before us that he believed in good faith that he was not practicing law, but was engaged only in preliminary investigative activities. Apparently, in its revised findings, the committee agrees that petitioner "may have possessed a good faith belief that he had not been engaged in the unauthorized practice of law with respect to his Ethics Commission duties."

In view of the now substantially conceded fact that petitioner maintained a good-faith belief that he was not engaged in the practice of law, we are of the opinion that he was unlikely to have agreed in his interview with Chief Disciplinary Counsel that he had been doing so. Chief Disciplinary Counsel's testimony on this subject is largely conclusory in effect as opposed to quoting specific statements by petitioner. We believe that Chief Disciplinary Counsel's sincere opinion that petitioner had been wrongfully engaged in the practice of law in his capacity as chief prosecutor for the commission may well have caused her to conclude that petitioner did not dispute her opinion as expressed on October 20, 1993. She candidly asserted that Quinn definitely disagreed with that opinion.

Based on the entire record in this case, and based upon the revised findings of the committee, we conclude that petitioner has not been guilty of such a lack of candor as to justify delaying his admission for a period of four months from and after the date of our consideration. We are mindful that petitioner's application has been delayed during the course of these lengthy proceedings before the committee and before this court. It is true that he did have *pro hac vice* privileges during much of that time. However, he has endured the uncertainty and the apprehension that undoubtedly arose from the committee's initial and reasserted recommendation.

We commend the committee for its careful consideration of petitioner's application and for its close attention to the possibility of petitioner's engaging in activities that might well be considered by an impartial person such as Chief Disciplinary Counsel to constitute the practice of law. However, we are of the opinion that since petitioner probably entertained a good-faith belief that he was not violating the law of the State of Rhode Island, both statutory and pursuant to the rules of this court, the penalty proposed by the committee would be unnecessarily harsh.

The committee has taken the very understandable position that the commission and its chief prosecution attorney (now its executive director) must be subject to the statutes of this state concerning unauthorized practice of law and also subject to the rules of this court including its disciplinary rules. This was a close case and the committee has certainly exercised its best conscientious judgment in its findings and recommendations to this court.

Nevertheless, it is this court's finding and determination that the petitioner did not act in bad faith, nor did he testify falsely before the committee, although his version of events that took place on October 20, 1993 may have been quite different from the recollections conscientiously held by Chief Disciplinary Counsel and her assistant trial counsel. We believe that each was recounting the events to the best of his or her recollection and that there was no attempt to deceive or mislead the committee by any of the three.

For the reasons stated, the application of the petitioner for admission to the bar of the State of Rhode Island is hereby granted. He may be sworn as a member of the bar at any time within thirty days subsequent to the date of this opinion. It will be the responsibility of the petitioner to comply with the provisions of Article II, Rule 1(e)(i) of the Supreme Court Rules relating to the admission of attorneys and others to practice law. The petitioner will have one year from the date of his admission to complete the course of instruction provided by the relevant committee of the Rhode Island Bar Association.